UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                    Case No.   8:09-cr-182-T-23TBM
                                                 8:10-cv-1978-T-23TBM
HUGO FAJARDO
_____/

**O R D E R**

Fajardo's motion to vacate under 28 U.S.C. § 2255 (Doc. 1) challenges the validity of both his conviction for conspiracy to possess with the intent to distribute and distribution of five hundred grams or more of cocaine and his sentence of forty-one months. The motion to vacate contains nine grounds of ineffective assistance of counsel. The United States correctly argues that, as part of a plea agreement, Fajardo waived his right to assert many of the grounds. Response (Doc. 7) The motion to vacate lacks merit.

**FACTS**[1]

During the period of the conspiracy charged in count one of the indictment, including during the period from July to September of 2008, Hugo Fajardo was a knowing and willing participant with other persons, including, but not limited to, Caroline Ramos, in a conspiracy to possess with the intent to distribute and to distribute over five hundred grams of cocaine. During the drug trafficking

---

[1] This summary of the facts is copied from the plea agreement. (Doc.11)

conspiracy, Fajardo would obtain cocaine from other persons and then further distribute the cocaine to other persons, including, but not limited to, Caroline Ramos. During the period from July to September of 2008, Ramos negotiated with a confidential informant (CI) and an undercover (U/C) DEA agent for the purpose of selling cocaine to the CI and U/C agent and distributed cocaine on the following occasions.

On July 30, 2008, Ramos met with the CI and U/C agent at the parking lot of the Ross Department store in Palm Harbor (Pinellas County) and sold approximately 81 grams of powder cocaine to the CI and U/C agent for $2,700.

On August 7, 2008, Ramos again met with the CI and U/C agent at the Ross Department Store parking lot and sold approximately 112 grams of powder cocaine to the CI and U/C agent for $4,000.

On September 18, 2008, Ramos met with the CI and U/C agent at the same location and sold approximately 232 grams of powder cocaine to the CI and U/C agent for $8,100. Ramos was arrested after the deal and after her Miranda warnings voluntarily admitted her involvement in distributing cocaine and agreed to contact one of her cocaine sources, Hugo Fajardo.

On September 18, 2008, Ramos called Hugo Fajardo and requested four ounces of powder cocaine, which Fajardo agreed to provide to Ramos. Law enforcement arrested Fajardo that evening and seized approximately 115 grams of powder cocaine from Fajardo which he (Fajardo) intended to deliver to Ramos.

After his arrest, Fajardo admitted that he obtained cocaine from other persons and that he had supplied Ramos with cocaine in the past.

The parties agree that Fajardo should be held accountable for at least five hundred grams, but less than two kilograms of cocaine for sentencing purposes.

## **INEFFECTIVE ASSISTANCE OF COUNSEL**

Fajardo claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (*quoting Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an

ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Fajardo must demonstrate that counsel's error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691-92. To meet this burden, Fajardo must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the

extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690-91. Fajardo cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992). *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (*en banc*) (*quoting Burger v. Kemp*, 483 U.S. 776, 794 (1987)). *See also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (counsel has no duty to raise a frivolous claim).

Although the *Strickland* standard controls a claim that counsel was ineffective for recommending that a client plead guilty, *Hill v. Lockhart*, 474 U.S. 52 (1985), *Agan v. Singletary*, 12 F.3d 1012 (11th Cir. 1994), the quantum of evidence needed to prove both deficient performance and prejudice is different. "[C]ounsel owes a lesser duty to a client who pleads guilty than to one who decided to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice

between accepting the prosecution's offer and going to trial." *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984). To prove prejudice, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. at 59.

## **GUILTY PLEA**

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973), holds that a guilty plea waives a non-jurisdictional defect:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

This waiver of rights precludes most challenges to the conviction. *See e.g.*, *United States v. Patti*, 337 F.3d 1217, 1320 (11th Cir. 2003) ("Generally, a voluntary, unconditional guilty plea waives all non-jurisdictional defects in the proceedings."), and *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992) ("A defendant who enters a plea of guilty waives all non-jurisdictional challenges to the constitutionality of the conviction, and only an attack on the voluntary and knowing nature of the plea can be sustained."). A guilty plea waives a claim of ineffective assistance of counsel based on a pre-plea event.

> In his habeas petition, Hutchins alleges that his trial counsel was ineffective for failing to explicitly define and advise him of a statute of

> limitations defense prior to advising him to waive that defense and plead
> guilty. Hutchins's voluntary guilty plea, however, waived any
> ineffective assistance of counsel claim.

*Hutchens v. Sec'y, Dep't of Corr.*, 273 Fed. App'x 777, 778 (11th Cir.), *cert. denied*, 555 U.S. 857 (2008). Consequently, the entry of a guilty plea waives a claim (other than a jurisdictional challenge), including both a substantive claim and a purported failing of counsel that occurred before entry of the plea. *See McMann v. Richardson*, 397 U.S. 759, 766 (1970) (holding that a plea waives the right to trial and, therefore, waives the "right to contest the admissibility of any evidence the State might have offered against the defendant").

## **GROUNDS FOR RELIEF**

As a preliminary matter, the grounds for relief are addressed in a sequence different from their order in the motion to vacate.[2] Also, the following additional facts provide a better understanding of this case.

Caroline Ramos was arrested for selling cocaine to an undercover officer and agreed to reveal her supplier. Ramos arranged for a sale from her daughter's fiancee, Fajardo, who was arrested just before delivering the cocaine to Ramos. Fajardo pleaded guilty pursuant to a plea agreement only one month after he was indicted and immediately cooperated with the police. Relatives of Ramos and his fiancee

---

[2] Fajardo enumerates nine grounds for relief on pages two and three in his motion to vacate. In the "argument" portion of the motion to vacate (Doc. 1 at 11-21), Fajardo enumerates six grounds, which incorporate the initially enumerated nine grounds for relief. This order identifies the individual claims based on the enumerated nine grounds for relief.

attacked Fajardo and damaged his car with a baseball bat. This violence forced him to temporarily re-locate.

Fajardo retained Daniel Fernandez, Esq., as his counsel. Fajardo represents that he "has known counsel for a long time and trusted him" and that "counsel has a reputation . . . as someone who always gets his client to cooperate with law enforcement." Reply at 6, 13 and 23 (Doc. 13)[3] Based on Fernandez's negotiations with the prosecutor and Fajardo's cooperation, the United States moved for a two-level downward departure at sentencing, which permitted a sentence below the mandatory minimum sentence. A federal drug enforcement agent spoke on Fajardo's behalf before sentencing. Fajardo accepted responsibility for his actions.[4]

---

[3] Similarly, at sentencing counsel stated, "Mr. Fajardo has been a client of mine for a number of years." Transcript of Sentencing at 20 (Doc. 30)

[4] Fajardo's statement at sentencing contains the following admissions:

> Basically, Mr. Fernandez is right . . . . I'm the only one to blame for this. That's why I'm here. I'm grateful that the[ police] gave me the opportunity to help myself.
>
> Yes, I went through a lot of stuff while I was cooperating. [The DEA Agent] was like a helping hand . . . . I don't blame anybody. I blame myself for everything that has happened. And I got -- I'm selfish because I didn't think about my kids or my family because they're the ones suffering, not me. I'm man enough to do my time but not my kids. They always ask for daddy. My wife is out there. She has to live with her mother because she depended on me all the time.
>
> . . . .
>
> I had a chance to run and I didn't. Whatever crimes I did I have to pay for. And I tried to help myself out, try to overcome evil, try to do good. But I just got caught from every single direction . . . . I have

(continued...)

Fajardo's forty-one month sentence is based on a three-level departure (a level lower than the United States requested) and is less than the statutory minimum sentence of sixty months.

Grounds Two and Eight:

Fajardo alleges that trial counsel rendered ineffective assistance by failing to advise him about every paragraph both in the plea agreement and the pre-sentence report. The claim lacks merit because, at the change of plea hearing, the magistrate

---

[4](...continued)
> to . . . cooperate, do a whole bunch of things. It was pulling me from every single direction.
>
> I was stuck a couple of times where . . . my decisions were . . . poor. But maybe my poor decisions helped me to be here, standing here today. I don't want to exaggerate but that's how I felt at that time, always drugs around, drugs around. At the same time people are spreading rumors about me, they're bashing in the only car that me and my family had . . . .
>
> My wife, she -- she had to turn away from her family. They hate her because of me. But she knew that I was being truthful when it came to all the drugs that [Ramos] was telling to [the DEA Agent], that they didn't come from me. [Ramos] used me like an easy escape. Because she -- she's protecting one of her kids so she threw me under the bus. . . . I was standing in the middle of the road and she just shoved me there. I am grateful for the opportunity the[ police] gave me to help myself out.
>
> And I just . . . like I said, I'm man enough to do my time, but I just feel -- I apologize to my kids and to my family, my parents everyday. I know they're the ones that are heartbroken because of this situation . . . . It's taken these months in jail to open up my eyes and show me the type of person that I didn't like. And hopefully . . . I can keep striving and just . . . leave the past behind me and look forward to being a better man, a better father for my kids, and just a . . . better citizen . . . in this country. And basically I have nobody to blame, and I just ask for mercy and to be lenient.

judge thoroughly reviewed the plea agreement with Fajardo, who represented that he both had read the agreement and "fully understood" it. Transcript of Change of Plea Hearing at 36 (Doc. 27) Because Daniel Fernandez was not available, his partner, Cynthia Hernandez, represented Fajardo at the change of plea hearing. Hernandez represented that she was "actively involved" in Fajardo's case and not simply "standing in" for Fernandez. Fajardo stated that he had no complaints about his attorneys' representations. Transcript of Change of Plea Hearing at 40 and 29, respectively (Doc. 27) Fajardo understood that the prosecutor had sole discretion whether to recommend a reduced sentence based on "substantial assistance." Transcript of Change of Plea Hearing at 19 (Doc. 27) Fajardo's representations carry great weight. "[T]he representations of the defendant . . . [at the plea proceeding] as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). Additionally, a plea waives both known and unknown challenges to the proceedings. *Brady v. United States*, 397 U.S. 742, 757 (1970) ("A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action. More particularly, absent misrepresentation or other impermissible conduct by state agents . . . a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable

because later judicial decisions indicate that the plea rested on a faulty premise."). Grounds two and eight lack merit.

Grounds Four, Five, and Six:

Fajardo alleges that counsel rendered ineffective assistance by (1) failing to challenge the quantity of drugs alleged in the indictment (ground four), (2) failing to challenge the government's failure to call Ramos as a witness at the sentencing to show that he was not responsible for 500 grams of cocaine (ground five), and (3) allowing the prosecutor to base the indictment on Ramos's false testimony. Grounds four and five lack merit because, by agreeing to the drug quantity stated in the plea agreement, Fajardo waived the right to challenge the quantity of the drugs alleged in the indictment. Fajardo represented that he understood that his guilty plea would relieve the United States from having to prove the drug quantity. Transcript of Change of Plea Hearing at 15 (Doc. 27) Ground six lacks merit because the falsity of Ramos's information to the police was revealed at sentencing. Transcript of Sentencing at 8-10 (Doc. 30)[5]

Ground Three:

Fajardo alleges that counsel rendered ineffective assistance by failing to move for a downward departure based on the violence he endured because he cooperated

---

[5] Fajardo submitted under seal a motion to supplement his motion to vacate. Fajardo asserts that, at his behest, a source has ascertained the identity of the person who was actually supplying cocaine to Ramos. Fajardo provides no affidavit from that individual. Fajardo represents that he mailed a copy of his motion to supplement to the Assistant United States Attorney assigned to his criminal case. As a consequence, no further action is required.

with the police. Fajardo cannot show either deficient performance or prejudice because the violence was discussed at sentencing. The violence was considered in granting Fajardo a departure one level lower than the United States requested.

Ground One:

Fajardo alleges that counsel rendered ineffective assistance by not explaining the potential immigration consequences of his conviction. Fajardo relies on *Padilla v. Kentucky*, ___ U.S. ___, 130 S. Ct. 1473, 1486 (2010), which holds "that counsel must inform her client whether his plea carries a risk of deportation." *Padilla* was decided several months after Fajardo's conviction became final. Generally, "a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise." *Brady v. United States*, 397 U.S. 742, 757 (1970). Consequently, Fajardo's claim depends on *Padilla*'s retroactive application. The analysis of retroactivity is controlled by *Teague v. Lane*, 489 U.S. 288 (1989), which "clarif[ied] how the question of retroactivity should be resolved for cases on collateral review," 489 U.S. at 300, and holds that, "[u]nless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." 489 U.S. at 310. Retroactively applying a "new rule" is disfavored. *See Teague*, 489 U.S. at 309 ("Application of constitutional rules not in existence at the time a conviction became final seriously undermines the principle of finality which is essential to the operation

of our criminal justice system."). Despite *Teague*'s caution about the Court's need to address the retroactivity of a decision—"the question whether a decision announcing a new rule should be given prospective or retroactive effect should be faced at the time of that decision," 489 U.S. at 300 (internal quotations omitted)—*Padilla* fails to state whether it applies retroactively and the Eleventh Circuit Court of Appeals has not yet addressed whether *Padilla* applies retroactively.[6]

*Padilla* announced a "new rule." In deciding whether a rule is new, *Saffle v. Parks*, 494 U.S. 484, 488 (1990), suggests determining "whether a state court considering Parks's claim at the time his conviction became final would have felt compelled by existing precedent to conclude that the rule Parks seeks was required by the Constitution." *Padilla* specifically recognized the abrogation of the law in most of the states and in all of the federal circuits, and the concurring opinion cites an article in which the authors report that eleven federal circuit courts plus more than thirty states and the District of Columbia "'hold that defense counsel need not discuss with their clients the collateral consequences of a conviction,' including deportation." 130

---

[6] The other circuits, however, are split on whether *Padilla* announced a "new rule" and whether the decision applies retroactively to cases on collateral review. *Compare Chaidez v. United States*, 655 F.3d 684, 694 (7th Cir. 2011) (holding that *Padilla* announced a "new rule" inapplicable on collateral review) (*petition for cert. filed* December 23, 2011), *United States v. Hernandez-Monreal*, 404 Fed. App'x 714, 715 n.\* (4th Cir. 2010) (noting that "nothing in the *Padilla* decision indicates that it is retroactively applicable to cases on collateral review"), *United States v. Chang Hong*, ___ F.3d ___, 2011 WL 3805763, at \*1 (10th Cir. August 30, 2011) (holding that *Padilla* announced a "new rule" not entitled to retroactive application), with *United States v. Orocio*, 645 F.3d 630, 641 (3rd Cir. 2011) (holding that *Padilla* is "an 'old rule' for *Teague* purposes and is retroactively applicable on collateral review").

S. Ct. at 1481 and 1487. Based on the near uniformity of law that *Padilla* abrogated, a court "would [not] have felt compelled by existing precedent to conclude that" trial counsel renders ineffective assistance by not advising a client about the risks of deportation. No earlier Supreme Court decision extended *Strickland*'s ineffective assistance of counsel test to this situation. To the contrary, precedent in this circuit foreclosed a claim of ineffective assistance of counsel based on these facts. *See, e.g.*, *United States v. Campbell*, 778 F.2d 764 (11th Cir. 1985).

A "new rule" is defined as "a rule that 'breaks new ground,' 'imposes a new obligation on the States or the Federal Government,' or was not 'dictated by precedent existing at the time the defendant's conviction became final.'" *Parks*, 494 U.S. at 488. Generally, a "new rule" is not retroactively applied.

> [T]he general principle is that new rules will not be applied on collateral review [except if (1)] the rule places a class of private conduct beyond the power of the State to proscribe . . . or addresses a "substantive categorical guarante[e] accorded by the Constitution," such as a rule "prohibiting a certain category of punishment for a class of defendants because of their status or offense," [or (2) the rule is a] "watershed rule of criminal procedure" implicating the fundamental fairness and accuracy of the criminal proceeding.

*Parks*, 494 U.S. at 494-95 (*quoting Teague*). Neither of the two exceptions to non-retroactivity applies.[7]

---

[7] Fajardo's possible deportation is unrelated to the criminal conduct in this case. The "watershed" exception is extremely limited, applying only to situations involving "the *bedrock procedural elements* that must be found to vitiate the fairness of a particular conviction." *Teague*, 489 U.S. at 311, *quoting Mackey v. United States*, 401 U.S. 667, 694 (1971) (opinion concurring in judgments in part and dissenting in part) (emphasis original). "Although the precise contours of this exception may be difficult to discern, we have usually cited *Gideon v. Wainwright*, 372 U.S. 335, 83 S.

(continued...)

A further reason cautions against Fajardo's benefitting from the "new rule." *Padilla*'s holding—that counsel performs deficiently if counsel fails to advise about the risks of automatic deportation—substantially relies on the gradual movement toward automatic deportation. The Court allocated considerable space to explaining the evolution of immigration law. *Padilla*, 130 S. Ct. at 1478-80. Until 1990, because both the judiciary and the Attorney General could block deportation, a defendant's deportation following conviction was not certain. In 1990 Congress removed a sentencing judge's authority to issue a "judicial recommendation against deportation," a "procedure [that] had the effect of binding the Executive to prevent deportation . . . ." 130 S. Ct. at 1479. Six years later Congress withdrew, except in limited situations, the Attorney General's authority to grant discretionary relief from deportation. The loss of both judicial and executive discretion to prevent a deportation causes the current automatic deportation following conviction. The following observation in *Padilla*, 130 S. Ct. at 1480, shows that the movement toward automatic deportation significantly impacted the decision to require advice about the risks of deportation:

---

[7](...continued)
Ct. 792, 9 L. Ed. 2d 799 (1963), holding that a defendant has the right to be represented by counsel in all criminal trials for serious offenses, to illustrate the type of rule coming within the exception." *Parks*, 494 U.S. at 495. *Padilla*'s requirement that counsel provide advice about the risk of deportation is far different from *Gideon*'s establishment of the right to counsel. For example, *Graves v. United States Attorney General*, 611 F.3d 1337, 1345 n.7 (11th Cir. 2010), while citing *Padilla*, recognizes that "neither the Supreme Court nor this Court has specifically held that a defendant's ignorance of immigration consequences renders his guilty plea involuntary."

> These changes to our immigration law have dramatically raised the stakes of a noncitizen's criminal conviction. The importance of accurate legal advice for noncitizens accused of crimes has never been more important. These changes confirm our view that, as a matter of federal law, deportation is an integral part—indeed, sometimes the most important part—of the penalty that may be imposed on noncitizen defendants who plead guilty to specified crimes.

Although the Court justified the need to abrogate the universal rule against requiring immigration advice, Teague precludes Fajardo's benefitting from the retroactive application of *Padilla*.[8] Ground one lacks merit.

---

[8] Although district courts split on whether *Padilla* announces a "new rule," the best reasoned decision is *Dennis v. United States*, 787 F. Supp. 425, 429 (D. S.C. 2011), particularly the following "new rule" analysis:

> [W]hile it may have been the professional norm for criminal defense lawyers to advise their clients of possible deportation consequences, neither the defendant's trial counsel nor this court would have had any indication that this best practice was an actual constitutional right. "[T]he habeas court need only apply the constitutional standards that prevailed at the time the original proceedings took place," *Teague*, 489 U.S. at 306 (emphasis added) (internal quotation omitted), and based on the Fourth Circuit's holding in *[United States v.] Yearwood*, [863 F.2d 6 (4th Cir. 1988),] this court would not have felt compelled to find such a constitutional standard existed at the time of the defendant's decision to plead guilty.
>
> To be sure, the Supreme Court concluded that the two-prong ineffective assistance of counsel standard announced in *Strickland v. Washington* applied to Padilla's case, which forms the basis of the defendant's contention that *Padilla* merely applied existing precedent to a new context rather than established a new rule. But prior to concluding that the *Strickland* analysis applied to Padilla's claim, the Court had to first address the role of the direct versus collateral consequences distinction, which many lower courts had invoked to resolve ineffective assistance of counsel claims based on an allegation of a failure to be advised about the risk of deportation. It was only after the Court concluded that the direct versus collateral distinction was "ill-suited" to evaluate a *Strickland* claim based on the specific risk of deportation did it conclude "that advice regarding deportation is not categorically removed from the ambit of the Sixth Amendment right to counsel." *Padilla*, 130 S. Ct. at 1482 (emphasis in original).

(continued...)

Ground Seven:

Fajardo alleges that counsel rendered ineffective assistance by erroneously assuring him that he would serve less time than the sentence imposed if he participated in a drug treatment program. Fajardo contends that his immigration status precludes his receiving a reduction in the amount of time he must serve. When he pleaded guilty, Fajardo was cautioned that an attorney's representation about the likely sentence is not binding on the court and that the sentence actually imposed might be harsher than what counsel estimated, and Fajardo assured the court that "[no]body has promised him anything other than what is set out in [the] plea agreement . . . ." Transcript of Change of Plea Hearing at 22 and 28 (Doc. 27) At sentencing, Fajardo was recommended for the drug treatment program "if eligible and qualifying . . . ." Transcript of Sentencing at 36 (Doc. 30) Consequently, ground seven lacks merit.

---

[8](...continued)
> The [district] court believes this finding of the [Supreme] Court makes its decree a new rule, for the Supreme Court has never addressed the issue of whether or not the direct versus collateral consequence is appropriate to use in defining the scope of constitutionally "reasonable professional assistance" required under *Strickland*. In other words, although the Supreme Court did not overturn any precedent it had established, it did, for the first time, expand the Sixth Amendment right to counsel to cover the immigration implications of a criminal conviction by rejecting several lower courts' method of evaluating the issue.

Ground Nine:

Fajardo alleges that counsel's cumulative errors deprived him of his Sixth Amendment right to the effective assistance of counsel. Fajardo can prove cumulative error only by showing two or more errors. "Without harmful errors, there can be no cumulative effect compelling reversal." *United States v. Barshov*, 733 F.2d 842, 852 (11th Cir. 1984), *cert. denied*, 469 U.S. 1158 (1985). *See Conklin v. Schofield*, 366 F.3d 1191, 1210 (11th Cir. 2004) ("[T]he court must consider the cumulative effect of [the alleged errors] and determine whether, viewing the trial as a whole, [petitioner] received a fair trial as is [his] due under our Constitution."). Because each individual claim of error lacks merit, Fajardo shows no cumulative prejudicial effect. <u>See</u> *Mullen v. Blackburn*, 808 F.2d 1143, 1147 (5th Cir. 1987)[9] ("Mullen cites no authority in support of his assertion, which, if adopted, would encourage habeas petitioners to multiply claims endlessly in the hope that, by advancing a sufficient number of claims, they could obtain relief even if none of these had any merit. We receive enough meritless habeas claims as it is; we decline to adopt a rule that would have the effect of soliciting more and has nothing else to recommend it. Twenty times zero equals zero."). This ground lacks merit.

---

[9] Unless later superseded by Eleventh Circuit precedent, a Fifth Circuit decision issued before October 1, 1981, binds this court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*).

Accordingly, both the motion to vacate under 28 U.S.C. § 2255 (Doc. 1) and the sealed motion to supplement (S-1) are DENIED. The clerk shall enter a judgment against Fajardo and close this case.

## **CERTIFICATE OF APPEALABILITY**

Rule 11(a), Rules Governing Section 2254 Cases, requires a district court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." As stated in *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000):

> To obtain a COA under § 2254(c), a petitioner must make a substantial showing of the denial of a constitutional right, a demonstration that, under *Barefoot [v. Estelle*, 463 U.S. 880 (1983)], includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "'adequate to deserve encouragement to proceed further.'" *Barefoot*, *supra*, at 893, and n.4, 102 S. Ct. 3383 ("sum[ming] up" the "substantial showing" standard).
>
> When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. This construction gives meaning to Congress' requirement that a prisoner demonstrate substantial underlying constitutional claims and is in conformity with the meaning of the "substantial showing" standard provided in *Barefoot*, *supra*, at 893, and n.4, 102 S. Ct. 3383 . . . .

An applicant need not show probable success on appeal, but the issuance of a certificate of appealability entails more than "mere good faith" or only the "absence of frivolity." As stated in *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003):

> We do not require petitioner to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus. Indeed, a

claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail. As we stated in *Slack [v. McDaniel*, 529 U.S. 473 (2000)], "[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 529 U.S. at 484, 120 S. Ct. 1595.

Fajardo asserts that he is entitled to the benefit of *Padilla v. Kentucky*, ___ U.S. ___, 130 S. Ct. 1473, 1486 (2010). Because the circuit courts are split on the issue, whether the holding in *Padilla* is a non-retroactive new rule or simply an extension of *Strickland v. Washington*, 466 U.S. 668 (1984), is a debatable issue amongst jurists of reason.

Accordingly, a certificate of appealability is **GRANTED** on the following issue:

Whether *Padilla v. Kentucky* applies retroactively to permit Fajardo a claim under *Strickland v. Washington* for his counsel's omitting to explain the immigration consequence of his guilty plea and the resulting adjudication of guilt.

Leave to proceed *in forma pauperis* on appeal is **GRANTED**.

ORDERED in Tampa, Florida, on January 26, 2012.

*Steven D. Merryday*
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE